IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

GEOTAG, INC.,                          §
                                       §
                  Plaintiff,           §
                                       §
        v.                             §          Civil No. 2:11-cv-00403
                                       §
ZOOSK, INC.,                           §          JURY TRIAL DEMANDED
                                       §
                  Defendant.           §
                                       §

DEFENDANT'S MOTION TO TRANSFER VENUE

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................1

II.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ...................................1

    A.  The Parties .................................................................................................1

    B.  Third Parties Relevant to This Lawsuit ....................................................2

III.  LEGAL STANDARD.............................................................................................4

IV.  CONVENIENCE FAVORS TRANSFERRING THIS CASE TO THE NORTHERN
DISTRICT OF CALIFORNIA ...................................................................................6

    A.  GeoTag Could Have Filed Suit Against Zoosk in the Northern District of
California ...................................................................................................6

    B.  Private Factors ..........................................................................................6

        1.  The Relative Ease of Access to Sources of Proof Heavily Favors
Transfer .........................................................................................6

        2.  The Convenience of the Parties and Cost of Attendance for Willing
Witnesses Heavily Favors Transfer ...............................................8

        3.  The Availability of Compulsory Process to Secure the Attendance
of Witnesses Strongly Favors Transfer.......................................10

    C.  Public Factors.........................................................................................11

        1.  The Administrative Difficulties Flowing From Court Congestion
Favors Transfer ...........................................................................11

        2.  The Local Interest in Having the Litigation Decided at Home
Heavily Favors Transfer .............................................................12

        3.  The Familiarity With the Governing Law and Potential Conflicts
of Law Factors Are Neutral ........................................................13

V.  TRANSFER IS CONSISTENT WITH JUDICIAL ECONOMY ....................................14

VI.  CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

**Page**

CASES

*Collins v. JC Penney Life Ins. Co.,*
No. C 01-4069-SI, 2002 WL 505931 (N.D. Cal. Apr. 1, 2002) ...........................11

*EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.,*
2:10-CV-448, 2012 WL 122562 (E.D. Tex. Jan. 9, 2012) ...................................13

*In re Acer Am. Corp.,*
626 F.3d 1252 (Fed. Cir. 2010)......................................................................5, 9

*Gulf Oil Corp. v. Gilbert,*
330 U.S. 501 (1947)......................................................................................12

*In re Genentech Inc.,*
566 F.3d 1338 (Fed. Cir. 2009)...............................................................5, 7, 12

*In re Hoffmann-La Roche Inc.,*
587 F.3d 1333 (Fed. Cir. 2009).........................................................................5

*In re Morgan Stanley,*
417 Fed. Appx. 947 (Fed Cir. 2011) ...............................................................5, 6

*In re Nintendo Co., Ltd.,*
589 F.3d 1194 (Fed. Cir. 2009)........................................................4, 7, 10, 12

*In re TS Tech USA Corp.,*
551 F.3d 1315 (Fed. Cir. 2008).........................................................4, 8, 12

*In re Verizon Bus. Network Servs., Inc.,*
635 F.3d 559 (Fed. Cir. 2011)......................................................5, 14, 15

*In re Vistaprint Ltd.,*
628 F.3d 1342 (Fed. Cir. 2010).........................................................................5

*In re Volkswagen AG,*
371 F.3d 201 (5th Cir. 2004) ("*Volkswagen I*").......................................6, 8, 12

*In re Volkswagen of Am., Inc.,*
545 F.3d 304 (5th Cir. 2008) (*en banc*) ("*Volkswagen II*") .........................11, 12, 13

*In re Volkswagen of Am., Inc.,*
566 F.3d 1349 (2009) ("*Volkswagen III*") ...............................................14

*In re Zimmer Holdings, Inc.*,
  609 F.3d 1378 (Fed. Cir. 2010)...................................................................5, 14

*Neil Bros. Ltd. v. World Wide Lines, Inc.*,
  425 F.Supp.2d 325 (E.D.N.Y. 2006) ........................................................7

*Odom v. Microsoft Corp.*,
  596 F. Supp. 2d 995 (E.D. Tex. 2009) ........................................................4

*Optimum Power Solutions, LLC v. Apple, Inc.*,
  794 F.Supp.2d 696 (E.D. Tex. 2011) .............................................6, 10, 11

*Orinda Intellectual Props. USA Holding Group, Inc. v. Sony Corp.*,
  2:08-CV-323, 2009 WL 3261932 (E.D. Tex. Sept. 29, 2009).................14

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981)........................................................................4

*Shoemake v. Union Pacific R.R. Co.*,
  233 F. Supp.2d 828 (E.D. Tex. 2002) ........................................................10

*SIPCO, LLC v. Control4 Corp.*,
  6:10-cv-249, 2011 WL 529336 (E.D. Tex. Feb. 8, 2011)........................4

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964)........................................................................4

## STATUTES

28 U.S.C. § 1400(b) ........................................................................6

28 U.S.C. § 1404 ........................................................................1

28 U.S.C. § 1404(a) ................................................................. *passim*

28 U.S.C. § 1407 ........................................................................15

CAL. CIV. PROC. CODE § 1989 (Deering 2012)............................................11

## OTHER AUTHORITIES

Fed. R. Civ. P. 45(b)(2)(C) ........................................................................11

H.R. No. 90-1130, 1st Sess. (1968) ........................................................15

Pursuant to 28 U.S.C. § 1404, San Francisco-based Defendant Zoosk, Inc. ("Zoosk") respectfully moves the Court for an order transferring the above-entitled action to the United States District Court for the Northern District of California.

## I.  INTRODUCTION

This dispute involves parties, evidence, and witnesses that have only minimal connection with the Eastern District of Texas. Though Plaintiff GeoTag, Inc. ("GeoTag") has an office in the Eastern District Texas and has recently incorporated in this state, it is clear that its only real "business" in this District is to file lawsuits in an attempt to generate revenue through quick settlements.  On the other hand, Defendant Zoosk has its principal place of business in San Francisco and provides a popular online social networking dating product and service.  No evidence or witnesses relating to Zoosk's allegedly infringing product are located in the Eastern District of Texas, nor is there any other connection to this District other than GeoTag's minimal physical presence and its preference for litigating its patent here.

## II.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Parties

Defendant Zoosk is a private start-up company founded in 2007, which currently has approximately 120 employees.  *See* Declaration of Eric Barnett in Support of Defendant Zoosk, Inc.'s Motion to Transfer Venue ("Barnett Decl."), ¶ 3.  Zoosk provides an online social network dating service which operates through its website www.zoosk.com.  *Id.*  The Zoosk dating service, including the allegedly infringing member profile search function, was conceived, developed and designed at Zoosk's San Francisco headquarters.  *Id.*, ¶ 3-4.  Neither Zoosk's dating service, nor its member profile search function, is directed to any specific states, regions or districts.  *Id.* ¶ 3.  All of Zoosk's technical documents and highly-confidential source-code, as

well as its sales, marketing, and financial information relating to its product are located there. *Id.*, ¶ 8.  All of Zoosk's executives and employees routinely work out of Zoosk's San Francisco office and live in Northern California.  *Id.*, ¶ 5.  Zoosk expects that some of its employees who work and live in Northern California may testify in this case.  *Id.*  Due to the small size of Zoosk's workforce, it would be costly for Zoosk to have executives and employees travel to the Eastern District of Texas.  *Id.*, ¶ 6.  These costs for travel and reduced productivity could largely be avoided if Zoosk's witnesses could participate in the litigation within the Northern District of California.  *Id.*  Overall, it would be far more convenient and much less disruptive for Zoosk if this case were to proceed in the Northern District of California.  *Id.*, ¶ 8.

GeoTag is a recently incorporated Texas corporation with an office in Frisco, Texas. Ribera Decl., Exs. A-B.  Although GeoTag's corporate website states that it provides "a search engine for businesses and organizations in Texas," its January 2011 corporate filing makes clear that its only real "business" is to file lawsuits in an attempt to generate revenue through quick settlements.  *See id.* Ex. D; *see also id.*, Ex. C at 3 (stating "[a]ll of our revenue will be derived from our ability to negotiate and enforce settlement and licensing arrangements with unauthorized users of our '474 patented technology").  GeoTag also apparently has only three employees, one of whom is John Veenstra, GeoTag's CEO and a co-inventor of the '474 patent. *See id*. Ex. C at 37, Ex. D.  The other co-inventors of the '474 patent are Peter D. Dunworth and Joan Nagelkirk, who appear to reside in Pleasanton, California (within the Northern District) and Chicago, Illinois.  *See id.*, Ex. E at ¶ 5.

## B.    Third Parties Relevant to This Lawsuit

Numerous third parties relevant to this lawsuit are located in California; none are located in the Eastern District of Texas. For instance, Google, Inc., based in Mountain View, California,

has filed an action in Delaware seeking a declaration that the '474 patent is invalid.  Ribera

Decl., Ex. F at ¶¶ 33-36.  In that action, Google has issued numerous subpoenas to third parties

in an effort to identify invalidating prior art references. *Id.*, Exs. G-M. Google therefore likely

has access to relevant documents, witnesses and prior art (including software and source code)

bearing on the '474 patent's validity.  Further, Peter Dunworth, one of the '474 patent's co-

inventors continues to live in Northern California.  *Id.*, Ex. E at ¶ 5.  The '474 patent was also

assigned to two California companies—Z Land, Inc. and CityHub, Inc.—for the first ten years of

its existence.  *Id.*, Ex. N.  Witnesses and evidence relating to these prior assignees are most likely

still located in California.  Further, none of the third-party prior art sources identified in

subpoenas issued in the parallel Delaware action are located in the Eastern District of Texas, *id.*,

Exs. G-M, whereas several material prior art sources have strong connections to California,

including:

- Sega of America, Inc., located in San Francisco, California, which developed prior art online store locator systems featured on Sega's websites prior to the January 31, 1996 filing date of the '474 patent, and;
- Teletrac Inc., located in Garden Grove, California, which developed the prior art TELETRAC Mobile Information Server, and possibly designed products claimed in prior art U.S. Patent 6,049,711, titled "Method and Apparatus for Providing Location-Based Information Services," which was filed August 23, 1995.

*Id.*, Exs. O, P.

Zoosk expects to use these prior art sources as part of their invalidity defense, and

inevitably will require information and possibly testimony from them.  Although potentially

critical to the defense of this case, none of these third parties are subject to the trial subpoena

power of the Eastern District of Texas. Thus, if this case proceeds in Texas, Zoosk would likely

be forced at trial to present their testimony through deposition transcripts rather than in-person

testimony.

III.    **LEGAL STANDARD**

"For the convenience of parties and witnesses, in the interest of justice, a district court

may transfer any civil action to any other district or division where it might have been brought."

*See* 28 U.S.C. § 1404(a). The goals of § 1404(a) are "to prevent waste of time, energy, and

money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience

and expense."  *SIPCO, LLC v. Control4 Corp.*, 6:10-cv-249, 2011 WL 529336, *1 (E.D. Tex.

Feb. 8, 2011) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). When deciding whether

to transfer venue, a district court balances two categories of interests:  the private interests, *i.e.*,

the convenience of the litigants, and the public interests in the fair and efficient administration of

justice.  *Odom v. Microsoft Corp.*, 596 F. Supp. 2d 995, 999 (E.D. Tex. 2009) (citing *In re

Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*en banc*) ("*Volkswagen II*")).

Summarizing Fifth Circuit law, the Federal Circuit has explained:

> The "private" interest factors include:  (1) the relative ease of access to sources of proof;
> (2) the availability of compulsory process to secure the attendance of witnesses; (3) the
> cost of attendance for willing witnesses; and (4) all other practical problems that make a
> trial easy, expeditious and inexpensive.  The "public" interest factors to be considered
> are:  "(1) the administrative difficulties flowing from court congestion; (2) the local
> interest in having localized interests decided at home; (3) the familiarity of the forum
> with the law that will govern the case; and (4) the avoidance of unnecessary problems of
> conflicts of laws [or in] the application of foreign law."

*In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (citing *Piper Aircraft Co. v.

Reyno*, 454 U.S. 235, 241 n.6 (1981); quoting *Volkswagen II*, 545 F.3d at 315).

Where most witnesses and evidence are closer to the transferee venue and few or no

convenience factors favor the venue chosen by the plaintiff, transfer to a more convenient venue

is appropriate.  *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198-99 (Fed. Cir. 2009) (mandating

transfer where numerous witnesses, the majority of defendant's documents, and defendant's

principal place of business were in the transferee district, and where "[n]o parties, witnesses, or

4

evidence ha[d] any material connection to the venue chosen by the plaintiff"); *In re Genentech Inc.*, 566 F.3d 1338, 1348 (Fed. Cir. 2009) (mandating transfer where two of the three parties were located in the transferee state and a substantial number of witnesses resided within the transferee venue, and where there were no witnesses, relevant documents or parties within Texas); *see also In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1335-36 (Fed. Cir. 2009) (requiring transfer where one of three parties, four of eighteen non-party witnesses, and three of seven party witnesses were located in the transferee forum); *In re Acer Am. Corp.*, 626 F.3d 1252, 1254-56 (Fed. Cir. 2010) (ordering transfer to the Northern District of California where five of twelve defendants were headquartered in Northern California, along with a substantial number of party witnesses).

Importantly, the existence of co-pending and past related actions does not prevent transfer where the locations of witnesses and the convenience factors otherwise favor the transferee forum. *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1379-82 (Fed. Cir. 2010) (directing transfer despite existence of a co-pending suit in the Eastern District of Texas). The Federal Circuit has also rejected the argument that the preservation of judicial economy based on prior knowledge of a patent should preclude transfer to a far more convenient venue. *In re Verizon Bus. Network Servs., Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011) (holding "[t]o interpret § 1404(a) to hold that any prior suit involving the same patent can override a compelling showing of transfer would be inconsistent with the policies underlying § 1404(a)") (quoting *In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 n.3 (Fed. Cir. 2010) ("Our holding today does not mean that, once a patent is litigated in a particular venue the patent owner will necessarily have a free pass to maintain all future litigation involving that patent in that venue.")). Similarly, in *In re Morgan Stanley*, the Federal Circuit found "the proper administration of justice may be to

transfer to the far more convenient venue even when the trial court has some familiarity with a matter from prior litigation." 417 Fed. Appx. 947, 949-50 (Fed. Cir. 2011) (citing *Verizon* and *Zimmer*).

## IV.    CONVENIENCE FAVORS TRANSFERRING THIS CASE TO THE NORTHERN DISTRICT OF CALIFORNIA

The balance of the private and public interest factors strongly weighs in favor of transfer. As described below, private factor four and public factors three and four are each neutral, every other factor favors transfer.

### A.    GeoTag Could Have Filed Suit Against Zoosk in the Northern District of California

The threshold requirement for a transfer of venue under Section 1404(a) is whether the case could have been brought in the judicial district in which transfer is sought. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").

There is no question that this case could have been brought in the Northern District of California as it is undisputed that Zoosk is a San Francisco-based company with headquarters in that District. *See* Dkt. 1, Complaint, ¶ 2; *see also* 28 U.S.C. § 1400(b) ("Any civil action for patent infringement may be brought in the judicial district where the defendant resides . . . .") Accordingly, no jurisdictional obstacle prevented GeoTag from suing Zoosk in the Northern District of California.

### B.    Private Factors

#### 1.    The Relative Ease of Access to Sources of Proof Heavily Favors Transfer

Despite technological advances that lighten the relative inconvenience of transporting large amounts of documents across the country, this factor is still considered as part of a transfer analysis. *Optimum Power Solutions, LLC v. Apple, Inc.*, 794 F.Supp.2d 696, 700-01 (E.D. Tex.

2011) (citing *In re Volkswagen II*, 545 F.3d at 316).  The relative ease of access to sources of proof in this case strongly favors transfer to the Northern District of California.  "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."  *In re Genentech*, 566 F.3d at 1345 (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.,* 425 F.Supp.2d 325, 330 (E.D.N.Y. 2006); *see also In re Nintendo* 589 F.3d at 1199.  This case is no exception.  All of Zoosk's documents are located in Northern California where it is headquartered, including technical documents describing the operation of its product and its highly-confidential source code.  Barnett Decl., ¶ 7.  Also located at Zoosk's headquarters are marketing, sales, and business documents showing that Zoosk is not liable for inducing or contributing to any infringement as well as financial documents bearing on the issue of damages. *Id*.  These documents will likely comprise the vast majority of Zoosk's document production and the bulk of the documents produced in this case.

Though most of Zoosk's documents are in electronic form, Zoosk's highly confidential product source code will almost certainly be subject to a protective order limiting its dissemination and the circumstances under which it may be viewed.  Such limitations are likely to include that the source code will only be viewable on a stand-alone terminal at Zoosk's headquarters in San Francisco, CA or its counsel's office in Mountain View, CA.  Accordingly, access to these documents would be more convenient for GeoTag and its attorneys if the case were transferred to the Northern District of California. In contrast, Zoosk has no pertinent evidence or knowledgeable witnesses in the Eastern District of Texas.  Barnett Decl., ¶¶ 4-5, 7.

Very few if any of GeoTag's sources of proof are likely to come from the Eastern District of Texas.  In particular, GeoTag has not alleged that it has a competing product and is not

seeking lost profits damages.  *See generally* Dkt. 1, Complaint.  Therefore GeoTag likely has

few documents that are relevant to the issue of damages. To the extent that GeoTag would claim

to have documents in this District relating to the conception and reduction to practice of the

claimed invention, numerous other such sources of proof also exist in California.  As noted

above, the patent-in-suit was developed in California and the original assignees of the patent

were California companies.  Ribera Decl., Ex. N.[1]  Indeed, one of the inventors—Peter D.

Dunworth—still resides in Pleasanton, California which is within the Northern District of

California.  *Id.*, Ex. E at ¶ 5.  Also several prior art sources are located in California, including

San Francisco-based Sega of America, Inc. and Telestra, and would be within the Northern

District's trial subpoena power if the case was transferred there.  None of the identified third-

party prior art sources subpoenaed in the Delaware action are located in the Eastern District of

Texas.  *Id.*, Exs. G-M.

<blockquote>

**2.      The Convenience of the Parties and Cost of Attendance for Willing Witnesses Heavily Favors Transfer**

</blockquote>

The convenience of the parties and the cost of attendance for willing witnesses also

heavily favor transferring this case to the Northern District of California.  The Federal Circuit

has applied the Fifth Circuit's "100-mile" rule in analyzing witness travel in a patent case.  *See*

*In re TS Tech*, 551 F.3d at 1320.  Under this rule, "[w]hen the distance between an existing

venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the

factor of inconvenience to witnesses increases in direct relationship to the additional distance to

be traveled."  *Id.* (quoting *Volkswagen I*, 371 F.3d at 204-05); *see also Volkswagen I*, 371 F.3d at

205 ("Additional distance means additional travel time; additional travel time increases the

---

[1] To the extent GeoTag would argue that Zoosk's users are a relevant source of evidence in Texas, such argument should not weigh for or against transfer.  Zoosk's online dating service is provided nationally and is not directed to any particular state.  Barnett Decl., ¶ 3.  Accordingly, users of Zoosk's service can be found at least as easily in the Northern District of California as in Texas.

probability for meal and lodging expenses; and additional travel time with overnight says increases the time which [ ] fact witnesses must be away from their regular employment.")

Given this Court's distance from Zoosk's headquarters in San Francisco, litigating here would impose an undue burden on Zoosk's employee fact witnesses and corporate representatives who may need to testify on technical and financial matters in this case. Barnett Decl., ¶¶ 5-6, 8. Since Zoosk employs a small workforce, it will be highly disruptive to its business if these key personnel are forced to spend at least an entire day just traveling to and from Marshall, Texas—time that could otherwise be spent productively at work. *See In re Acer*, 626 F. 3d at 1255 ("If all of these witnesses were required to travel to the Eastern District of Texas, the parties would likely incur significant expenses for airfare, meals, and lodging, as well as losses in productivity from time spent away from work"). All of these costs and inconveniences would be avoided if this case was transferred to the Northern District of California. In contrast, GeoTag's only real business is litigating its patent. Ribera Decl., Ex. C at 3. Accordingly, GeoTag's operations will not be disrupted if one of its three employees is required to travel in connection with this patent case.

But even if the travel time of GeoTag employees was considered, because its offices in Frisco, Texas are located only twenty-eight minutes from the Dallas airport, it would be much more convenient for GeoTag to travel to San Francisco than for Zoosk employees to travel to Marshall. *Id.*, Ex. Q. According to *Expedia.com*, there are typically about twenty direct flights from the Dallas airport to San Francisco, which can cost as little as $160. *Id.*, Exs. R. On the other hand, travel from San Francisco to Marshall would require either (1) a $160 direct flight into Dallas plus a two hour and forty five minute drive in a rental car, or (2) a $240 flight with multiple stops into Shreveport and then a forty minute drive in a rental car. *Id.*, Exs. S-T, X, Z;

*see also Optimum*, 794 F.Supp.2d at 701 (granting transfer to the Northern District of California after noting, *inter alia*, "the existence or non-existence of direct flights can impact the analysis of travel time") (citing *in re Volkswagen I*, 371 F.3d at 204 n. 3).

Additionally, the other inventors of the '474 patent, Peter Dunworth and Joan Nagelkirk, are believed to be residents of Pleasanton, California and Chicago, Illinois, respectively.  Ribera Decl., Ex. E at ¶ 5.  Both would be required to travel by plane if trial was held in Marshall, Texas, but only Joan Nagelkirk would need to travel by plane if it were held in the Northern District of California.  *Id.* Ex U; s*ee Shoemake v. Union Pacific R.R. Co*., 233 F. Supp.2d 828, 832 (E.D. Tex. 2002) ("the convenience of nonparty witnesses is accorded greater weight than that of party witnesses").  Further, direct flights from Chicago to San Francisco take about four and a half hours and costs roughly $200.  *Id.*, Ex. V.  Whereas there are no direct flights from Chicago to Marshall and such travel requires either (1) multiple plane flights (around $335) into Shreveport, Louisiana and a forty minute drive in a rental car from, or (2) a direct flight (at around $405) into Dallas and a two hour and forty-five minute drive in a rental car.  *Id.*, Exs. W-Z.

In sum, the presence of a substantial number of witnesses who are located in the Northern District of California, or who are much closer to that District—compared with the fact that very few relevant witnesses are located in the Eastern District of Texas—weighs heavily in favor of transfer.  *In re Genentech*, 556 F.3d at 1345; *In re Nintendo*, 589 F.3d at 1198-99.

### 3.    The Availability of Compulsory Process to Secure the Attendance of Witnesses Strongly Favors Transfer

The availability of compulsory process to secure the attendance of third party witnesses also strongly favors transfer.  This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue.  *Optimum*, 794 F.Supp.2d at 701.  The

factor will weigh the heaviest in favor of transfer when a transferee venue is said to have "absolute subpoena power." *Id.* (citing *Volkswagen II,* 545 F.3d at 316.

Zoosk is not aware of any relevant third-party witnesses who live in the Eastern District of Texas.  Conversely, highly relevant third parties reside in California and are subject to compulsory process in the Northern District.  They include: one of the three named inventors, Peter Dunworth , who lives in California; Google, which is a plaintiff in the co-pending declaratory judgment action in Delaware; Z Land, Inc. and CityHub, Inc., past assignees; and the other California-based prior art witnesses.  *See supra* Section II, B.  The Northern District of California has absolute subpoena power over all of these third-party witnesses and the Eastern District of Texas lacks subpoena power over a single third-party witness.  Fed. R. Civ. P. 45(b)(2)(C); CAL. CIV. PROC. CODE § 1989 (Deering 2012); *Collins v. JC Penney Life Ins. Co.*, No. C 01-4069-SI, 2002 WL 505931, at **3-4 (N.D. Cal. Apr. 1, 2002) (noting that the Northern District of California enjoys statewide compulsory process for trial subpoenas); *see also Volkswagen II*, 545 F.3d at 316 (instructing that a venue that enjoys absolute subpoena power for trial is deemed more convenient than a venue in which subpoenas are subject to motions to quash).  Forcing Zoosk to present extensive key witnesses' testimony through deposition transcript instead of live testimony is severely prejudicial.  If this case were to proceed in the Northern District of California, all of these critical witnesses could be compelled to attend trial and testify in-person, and there would be no such evidentiary prejudice.

## C. Public Factors

### 1. The Administrative Difficulties Flowing From Court Congestion Favors Transfer

Relative docket congestion in the Eastern District of Texas and the Northern District of California also favors transfer.  The Eastern District of Texas is one of the most active courts in

patent litigation across the nation, with nearly four times the number of patent cases filed there in 2012 than in the Northern District of California.  Ribera Decl., Ex. AA.  Presently, twenty-five percent (2/8) of the judicial assignments in the Eastern District of Texas are vacant, compared with only about twenty-one percent (3/14) in the Northern District of California.  *See Id.*, Ex. BB.  Further, statistics from the Administrative Office of the U.S. Courts indicate that the median time from filing to trial is roughly the same between the Northern District of California (25.4) and the Eastern District of Texas (25.1).  *See Id.*, Ex. CC; *In re Genentech*, 566 F.3d at 1347 ("To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor.").  Accordingly, this factor slightly favors transfer.

### 2.    The Local Interest in Having the Litigation Decided at Home Heavily Favors Transfer

The second public factor examines which district has the greater factual connection to the underlying litigation.  This factor is important because "jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."  *Volkswagen I*, 371 F.3d at 206 (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508-09 (1947)).  Interests that "could apply to virtually any judicial district or division in the United States," such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests.  *Volkswagen II*, 545 F.3d at 317-18; *In re Nintendo*, 589 F.3d at 1198; *see also In re TS Tech*, 551 F.3d at 1321 (ordering transfer; noting the "allegedly infringing [products] were sold throughout the United States, and thus the citizens of the Eastern District of Texas have no more or less of a meaningful connection to this case than any other venue").

The Eastern District of Texas has minimal particularized interest in the outcome of this case.  As explained above, none of Zoosk's relevant witnesses or documents are located here.  The accused product was not developed here.  The patent-in-suit was not invented here.  And

Zoosk has no connection with Texas aside from the nationwide availability of its online dating service.  Barnett Decl., ¶¶ 3-5, 7.  In contrast, the Northern District of California and the state of California have a significant localized interest in the outcome of this lawsuit.  Northern California is home to Zoosk's headquarters and is where the allegedly infringing features of Zoosk's service were developed.  *Id.*, ¶¶ 3-5, 7.  All of Zoosk's employees who may be called to testify at trial reside or routinely work in the Northern District of California.  *Id.*, ¶ 6; *see also Volkswagen II*, 545 F.3d at 317-18 (noting that the local interest factor "weigh[ed] heavily in favor of transfer" where parties, witnesses, evidence, and events giving rise to the action were all located in the transferee forum); *EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.*, 2:10-CV-448, 2012 WL 122562, *5 (E.D. Tex. Jan. 9, 2012) (finding local interests favored transfer where defendants were located in the Northern District of California and where the decisions and events giving rise to the patent infringement litigation occurred there).

Additionally, the patent-in-suit was conceived of by California inventors and was assigned for nearly a decade to two California companies. *See* Complaint, Ex. A ('474 patent) at [73] on face; *see also* Ribera Decl., Ex.  N.  Google, a relevant third-party participating in the co-pending Delaware action, is also located in Northern California.  Thus, the employees, witnesses and documents associated with Google are also located there.  *Volkswagen II*, 545 F.3d at 317-18.  That the patents-in-suit were transferred to a Texas company shortly before it began filing lawsuits does not give the residents of the Eastern District of Texas a meaningful interest in those disputes.  As a result, the local interest factor heavily favors transfer.

### 3. The Familiarity With the Governing Law and Potential Conflicts of Law Factors Are Neutral

The third and fourth public interest factors are both neutral.  Patent infringement actions are governed by federal law and therefore this District and the Northern District of California are

equally capable of adjudicating the patent issues in this case.  *See Orinda Intellectual Props. USA Holding Group, Inc. v. Sony Corp.*, 2:08-CV-323, 2009 WL 3261932, *4 (E.D. Tex. Sept. 29, 2009) ("Both the Eastern District of Texas and the Northern District of California are familiar with federal patent law, so this factor is neutral.")  And transfer does not present a potential conflict of laws, because federal patent law will apply regardless of where the case is heard.  *See Orinda*, 2009 WL 3261932, at *4.

## V.    TRANSFER IS CONSISTENT WITH JUDICIAL ECONOMY

The judicial economy to be gained from having the same court hear multiple lawsuits involving the same issues is an important consideration when determining whether transfer is appropriate.  *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (2009) ("*Volkswagen III*"). But, judicial economy should nevertheless be weighed against the conveniences favoring the transferee forum as part of the § 1404(a) analysis.  *See In re Zimmer*, 609 F.3d at 1382.  The existence of past related or co-pending cases involving the same patent should not be dispositive of the transfer analysis. *See In re Verizon*, 635 F.3d at 562 (ordering transfer despite prior claim construction involving the patent-in-suit; noting that "[t]o interpret § 1404(a) to hold that any prior suit involving the same patent can override a compelling showing of transfer would be inconsistent with the policies underlying § 1404(a)."); *see also In re Zimmer*, 609 F.3d at 1381-82 (ordering transfer despite related co-pending litigation in the transferor forum).

GeoTag is likely to argue that this case should be kept in this District because it has asserted its '474 patent here against other defendants.  But such argument should not be dispositive of the transfer issue where, as shown above, each of the private and public convenience factors are in favor of transfer or neutral. Only one case in this District has been substantively litigated through a *Markman* hearing, and the resulting claim construction order

was entered almost four years ago by Magistrate Judge Charles Everingham IV, who is no longer serving on this Court.  Ribera Decl., Exs. DD-EE.  Judge Folsom, who was later assigned the case, has also retired from the Court.  *Id.*, Ex. FF.  Similarly, Judge Ward, who originally turned the case over to Magistrate Judge Everingham IV, retired from the bench in October of 2011. *Id.*, Ex. GG-HH.  Given the time that has passed, and the fact that all of the judges affiliated with the earlier action have retired from this Court, it is unlikely that the Court retains any familiarity with the '474 patent such that judicial economy would be served by denying transfer.  *Id.*; s*ee also In re Verizon*, 635 F.3d at 562 (ordering transfer where lawsuit "settled more than five years before" and where court "would have to relearn a considerable amount based on the lapse in time between the two suits").

To the extent that judicial efficiency would be realized by denying transfer, other ways exist for obtaining similar levels of coordination between GeoTag's lawsuits that would not require Zoosk to litigate this case in such a distant and inconvenient forum.  In particular, this case could be submitted (along with other related cases) to the Judicial Panel on Multi-District Litigation ("JPML") for resolution of common questions of claim construction, patent validity and patent enforceability after it was transferred to the Northern District.  Indeed, Congress identified patent cases as particularly appropriate for transfer and consolidation for MDL proceedings when enacting 28 U.S.C. § 1407.  *See* H.R. No. 90-1130, 1st Sess. (1968).

## VI.    <u>CONCLUSION</u>

The Northern District of California is clearly a more convenient venue for this litigation. The majority of private and public factors strongly favor transfer, and none favor keeping this case in Texas. Not granting Zoosk's motion will serve only to inconvenience Zoosk's employees, and third party witnesses, and reward forum gamesmanship by GeoTag.

Accordingly, Zoosk respectfully requests an order transferring this case to the Northern District

of California.

Dated: June 21, 2012                           FENWICK & WEST LLP


                                   By: */s/ Hector J. Ribera*
                                   _____
                                        Hector J. Ribera (CA Bar No. 221511)
                                        (Admitted E.D. Texas)

                                        Silicon Valley Center
                                        801 California Street
                                        Mountain View, California  94041
                                        Telephone:     (650) 988-8500
                                        Facsimile:     (650) 938-5200
                                        Email:  hribera@fenwick.com

                                        Attorney for Defendant
                                        ZOOSK, LLC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on June 21, 2012.

*/s/ Hector J. Ribera*
Hector J. Ribera
Attorney for Zoosk, Inc.

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies (1) that counsel has complied with the meet and confer requirement in Local Rule CV-7(h) by conferring with opposing counsel on June 21, 2012 regarding the relief sought by this motion; and (2) the motion is opposed..

*/s/ Hector J. Ribera*
Hector J. Ribera
Attorney for Zoosk, Inc.

17