**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **GEOTAG, INC.,** *et al.*, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | No. 2:11-cv-00403-MHS |
| v. | § | |
| | § | **JURY TRIAL DEMANDED** |
| **ZOOSK, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

**GEOTAG, INC.'S RESPONSE TO DEFENDANT
ZOOSK, INC.'S MOTION TO TRANSFER VENUE**


**BUETHER JOE & CARPENTER, LLC**

    Eric W. Buether
    Christopher M. Joe
    Brian A. Carpenter
    Niky Bukovcan
    Mark D. Perantie
    Monica Tavakoli

    1700 Pacific Avenue
    Suite 4750
    Dallas, Texas 75201
    Telephone:    (214) 466-1271
    Facsimile:    (214) 635-1827

    **ATTORNEYS FOR PLAINTIFF
    GEOTAG, INC.**

Plaintiff GeoTag, Inc. ("GeoTag") files this Response to the Motion to Transfer Venue filed by Defendant Zoosk, Inc. ("Zoosk"), Dkt. No. 35.

## INTRODUCTION

Zoosk requests the Court to transfer GeoTag's claims against it to the Northern District of California. Zoosk's motion to transfer should be denied. First and foremost, transferring GeoTag's claims against Zoosk to California would create the existence of multiple lawsuits in different forums involving the same issues resulting wasteful duplicative litigation causing a waste of the parties' time and money and judicial resources contrary to the interests of justice and judicial economy. Furthermore, Zoosk has not identified any employees located in or near the proposed transferee forum, and has identified only one third party witnesses who resides in the San Francisco – a co-inventor of the `474 patent in suit who has agreed to travel to this forum to testify in this litigation. On the other hand, GeoTag has documents and several witnesses located in the Eastern District of Texas Thus, Zoosk has not satisfied its heavy burden of showing that the transferee venue is clearly more convenient than GeoTag's chosen forum.

## BACKGROUND

**Background of the GeoTag Litigation**. GeoTag's patent infringement claims against Zoosk concern a single patent – U.S. Patent No. 5,930,474 (the "`474 patent") – and is among the patent infringement claims GeoTag has asserted against several hundred defendants in 19 lawsuits pending in this Court (the "GeoTag litigation"). The `474 patent relates generally to the organization of geographical search technology made available through the Internet and its functionality, such as online yellow pages, "store locator" and job locator technology found on many websites and mobile applications.

The GeoTag Texas litigation commenced in July 2010, when GeoTag sued 14 defendants in a case styled *GeoTag, Inc. v. Frontier Communications Corp., et al.*, No. 2:10-cv-00265, and Yellowpages.com LLC in a case styled *GeoTag, Inc. v. Yellowpages.com LLC*, No. 2:10-cv-00272. Since December 2010, GeoTag filed 16 additional lawsuits. GeoTag asserted its claims against Zoosk in *GeoTag v. Zoosk, Inc., et al.*, Case No. 2:11-cv-403.[1] All of the lawsuits comprising the GeoTag litigation have been assigned to this Court since February 23, 2012.

**Plaintiff GeoTag**. GeoTag is a provider of patented online and mobile applications focused around geolocation technology. GeoTag's technology is based on fundamental technology described in the `474 Patent. The patented GeoTag technology is a spatial information management technology that makes possible a wide range of location enabled online and mobile applications. GeoTag location based technology is used in web and mobile applications such as yellow pages, classifieds, search and advertising, dating sites, career locators, product locators, store locators, dealer locators, job search sites, dating search sites, event locators, daily deals and coupons, in store availability, in store pick-up and other applications. GeoTag offers companies providing these online and mobile applications the opportunity to license the GeoTag technology. Declaration of John Veenstra at ¶ 3.

GeoTag is the owner of the `474 Patent. GeoTag is incorporated under the laws of the State of Texas with its headquarters and principal place of business located at 2591 Dallas Parkway, Suite 505, Frisco, Texas, which is located in the Eastern District of Texas. Veenstra Declaration at ¶ 4. GeoTag and its predecessors involved in the licensing and enforcement of the `474 patent have been located in the Eastern District of Texas since 2007. Veenstra Declaration at ¶ 5.

---

[1] In March 2011, GeoTag filed a lawsuit against a vendor of store locator technology – Where 2 Get It, Inc. – after Where2GetIt filed a declaratory judgment action in Delaware while engaged in settlement discussions with GeoTag. The Delaware court subsequently transferred the Where2GetIt declaratory judgment action to this Court.

GeoTag's executive management consists of John Veenstra as Chief Executive Officer and Lawrence P. Howorth as President and Chief Financial Officer. Mr. Veenstra has resided in Plano, Texas located in the Eastern District of Texas since 2007. Mr. Howorth resides in Plano, Texas, located within the Eastern District of Texas. Veenstra Declaration at ¶ 6.

Substantially all of GeoTag's business activities, including meetings of GeoTag's Board of Directors, take place in the Eastern District of Texas. Veenstra Declaration at ¶ 7. GeoTag contracts with support services primarily in Texas rather than hiring full time employees depending on the particular requirements. Veenstra Declaration at ¶ 8. GeoTag has employed and continues to employ several independent contractors in connection with its business. GeoTag currently employs at least five full time independent contractors at GeoTag's Frisco, Texas headquarters. At certain times, depending on workload, GeoTag has employed from six to 12 full time independent contractors at its headquarters in the Frisco, Texas. Veenstra Declaration at ¶ 8.

GeoTag has hundreds of thousands of pages of physical and electronic documents relating to the `474 patent located at its Frisco, Texas headquarters (and the Dallas, Texas office of its counsel). These documents include documents relating to the conception, reduction to practice, patent prosecution, licensing and enforcement of the `474 patent. Veenstra Declaration at ¶ 9.

GeoTag and its predecessors have developed and marketed a fully functioning yellow pages website called Zland Yellow Pages, which is currently operated from GeoTag's headquarters in Frisco, Texas, and employs the technology covered by the `474 patent. ZLAND Yellow Pages provides directory listing services and advertising to Texas businesses, organizations, local governments, community event organizers, churches, schools and universities. While GeoTag operates on a multiple server platform, GeoTag's primary server is located in Dallas, TX. Veenstra Declaration at ¶ 10. Zoosk's assertion that GeoTag's "only real 'business' is to file lawsuits in an

attempt to generate revenue through quick settlements," therefore, is not true and regrettably reflects unproductive advocacy by epithet.

**Defendant Zoosk**. Defendant Zoosk, with headquarters in San Francisco, California, states that it "is the world's largest social dating community, with millions of singles from around the globe using the service each month," and that "[m]ore than 50 million singles have registered for Zoosk since the company first launched in 2007." *See* Declaration of Eric W. Buether at ¶ 2. Zoosk further states that, "[c]urrently, over 1.6 million Facebook users have joined the Zoosk Fan Page, and thousands of new fans continue to join each day." *Id*. Although Zoosk asserts that "[n]either [it's] dating service, nor its member profile search function, is directed to any specific states, regions or districts," Dkt. No. 35 at 1, Zoosk specifically targets Texas in general and several specific Texas cities, including the City of Plano located in this forum. *Id*.

## ARGUMENT

### 1. Legal Standard

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Ultimately it is within a district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000).

Although the plaintiff's choice of forum is not a factor in the convenience analysis, it contributes to the defendant's burden of showing that the transferee venue is clearly more convenient. *Volkswagen II*, 545 F.3d at 314-15. The plaintiff's choice of venue should rarely be disturbed unless the balance of convenience factors is strongly in favor of the defendants. *Volkswagen II*, 545 F.3d at 315; *Gulf Oil v. Gilbert* 330 U.S. 507 (1947); *see also In re Affymetrix, Inc.*, Misc. No. 913, 2010 WL 1525010, at *1 (Fed. Cir. April 13, 2010) (citing *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663-64) ("[F]or transfer of venue to be appropriate, [defendant] must make a clear and indisputable showing that on balance, the convenience and interest of justice considerations strongly favor transfer."). Therefore, transfer is not appropriate unless the movant demonstrates good cause by showing that the transferee venue is *clearly* more convenient. *Volkswagen II*, 545 F.3d at 315; *Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc.*, No. 2:10-cv-216, 2012 WL 462956, at *5 (E.D. Tex. Feb. 13, 2012).

When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice. The private interest factors the court considers are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law. *Id.*

2. **Whether the Lawsuit Could be Brought in the Transferee Venue**

The threshold issue in a § 1404(a) analysis is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I,* 371 F.3d at 203. GeoTag does not dispute that its claims against Zoosk could have been brought in the Northern District of California.

### 3. Private Interest Factors

#### a. The Relative Ease of Access to Sources of Proof

The court must consider the physical location and volume of documents possessed by each party in relation to the transferee and transferor venues. *See Volkswagen II*, 545 F.3d at 314-15; *In re Nintendo Co. Ltd.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009). Despite technological advances that certainly lighten the relative inconvenience of transporting large amounts of documents across the country, this factor is still a part of the transfer analysis. *In re Volkswagen II*, 545 F.3d at 316. Courts analyze this factor in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue. *See In re Volkswagen II*, 545 F.3d at 316. This factor will turn upon which party, usually the accused infringer, will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues. *See, e.g.*, *In re Volkswagen II*, 545 F.3d at 314-15; *In re Nintendo*, 589 F.3d at 1199; *In re Genentech*, 566 F.3d at 1345.

Although Zoosk has shown that its offices are located in the proposed transferee forum – the Northern District of California – it has not submitted any evidence that any appreciable number of documents are actually located at those offices. Although Zoosk asserts in its motion that "[a]ll of Zoosk's documents are located in Northern California where it is headquartered, including technical documents describing the operation of its product and its highly-confidential source code," Dkt. No. 35 at 7, Zoosk's answers to GeoTag's venue-related interrogatories tell a different story. Those

interrogatory answers state that:

> Zoosk currently uses datacenters that host its servers in the Seattle, Washington area and San Francisco, California. These servers contain source code, user data bases, and certain forms of web content it provides through its websites. Zoosk also uses the services of third party cloud storage and content delivery network service providers to deliver some of its static Web content and EC2 instances (providing a peer-to-peer "handshake" for video chat), as well as run open source IRC software.

*See* Declaration of Eric W. Buether at ¶ 7. In its motion, Zoosk never mentions the servers located in Washington or the services of unidentified "third party cloud storage and content delivery network service providers." Zoosk does not identify what source code is stored where.

Zoosk mentions that "Google has issued numerous subpoenas to third parties in an effort to identify invalidating prior art references," and that "Google therefore likely has access to relevant documents . . . and prior art (including software and source code) bearing on the '474 patent's validity." Dkt. No. 35 at 3. Not only is this statement vague and speculative regarding the existence of any relevant documents in Google's custody, but the fact that Google might have documents it obtained pursuant to discovery in litigation is not entitled to any weight. *See Innovative Automation, LLC v. Audio Video and Video Labs, Inc.*, Civil Action No. 6:11-CV-234 LED-JDL (E.D. Tex. May 30, 2012) ("Thus, even if it is true that Rimage s documents will be produced in the Northern District of California, their presence in California is no more than an "artifact of litigation" and will not be considered in the Court s evaluation of this factor.") In view of Zoosk's inconsistent, vague and confusing statements regarding the location of its relevant documents, the Court should give little weight to Zoosk's "evidence" on this issue.

Zoosk asserts without any basis that "[v]ery few if any of GeoTag's sources of proof are likely to come from the Eastern District of Texas." Dkt. No. 35 at 7. GeoTag has shown that it has over a hundred thousand of pages of physical and electronic documents located at its headquarters in the Eastern District of Texas. Veenstra Declaration at ¶ 9. Contrary to Zoosk's unsupported

assertions in its brief, these documents include documents related to conception and reduction to practice and license agreements arguably relevant to the issue of reasonable royalty damages.

GeoTag's connections to Texas and the Eastern District means that its documents located in this forum must be considered in the transfer analysis. *Azure Networks, LLC v. CSR, PLC*, Civil Action No. 6:11cv139 LED-JDL at 11 (E.D. Tex. June 25, 2012). "Weight given to the location of the plaintiffs' documents is determined by whether the plaintiffs are an ephemeral entity." *Stragent LLC v. Audi AG*, No. 6:10-cv-227, 2011 WL 2912907 at *6 (E.D. Tex. July 18, 2011) (quoting *NovelPoint Learning LLC v. Leapfrog Enterprises, Inc.*, No. 6:10-cv-229, 2010 WL 5068146, at *4 (E.D. Tex. Dec. 6, 2010)). GeoTag's substantial connections with the Eastern District of Texas for over five years demonstrates that its presence in this forum is not ephemeral. *See Azure*, *supra*, at 11. Therefore, the location of GeoTag's relevant documents, which are all in the Eastern District of Texas, should be given weight in the transfer analysis. *See In re Google, Inc.*, 412 Fed. Appx. 295 (Fed. Cir. 2011) (taking into account non-ephemeral entity's documents and ties to the forum). Thus, looking at Zoosk's evidence in the most favorable light, this factor is neutral.

      b.    **The Availability of Compulsory Process to Secure the Attendance of Witnesses**

This factor will weigh more heavily in favor of transfer when more third-party witnesses reside within the transferee venue. *See In re Volkswagen II*, 545 F.3d at 316. The factor will weigh the heaviest in favor of transfer when a transferee venue is said to have "absolute subpoena power." *In re Volkswagen II*, 545 F.3d at 316. "Absolute subpoena power" is subpoena power for both depositions and trial. *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1338. **Importantly, the defendant bears the burden of identifying unwilling third party witnesses that would benefit from the transfer**. *Effectively Illuminated Pathways, LLC v. Aston Martin Lagonda of N. Am., Inc.*, No. 6:11-cv-34, slip op. at 5 (E.D. Tex. Apr. 19, 2012); *see also Texas Data Co., LLC v. Target*

*Brands, Inc.,* 771 F. Supp. 2d 630, 643 (E.D. Tex. 2011); *NovelPoint*, 2010 WL 5068146, at*6 (E.D. Tex. Dec. 6, 2010) (noting that the Court will not base its conclusion on unidentified witnesses); *West Coast Trends*, *Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011) (same).

Zoosk has identified only one third party witnesses who would benefit from transfer of this case to California – Peter Dunworth, one of the co-inventors of the `474 patent and a witness who has agreed to travel to this forum to testify in this litigation. Dkt. No. 35 at 3. Zoosk has not identified any other third party witness located in the San Francisco area. Zoosk asserts that Google is located in the San Francisco area, Dkt. No. 35 at 3, but fails to identify any Google employees who have knowledge of any relevant facts. Similarly, Zoosk mentions that two companies located in the California area – Sega of America and Teletrac – are "material prior art sources," Dkt. No. 35 at 3, but fails to identify any third party witnesses knowledgeable about this alleged prior art located in the Northern District of Texas. Zook also asserts that "[f]orcing Zoosk to present extensive key witnesses' testimony through deposition transcript instead of live testimony is severely prejudicial," Dkt. No. 35 at 11, but party witnesses are not taken into account when discussing the availability of compulsory process. *Promote Innovation LLC v. Ortho-McNeil Pharm., LLC*, No. 2:10cv109, 2011 U.S. Dist. LEXIS 15408, at *9 (E.D. Tex. Jan. 12, 2011) ("[C]urrent employees have an employment relationship with a party and should be considered party witnesses."). Therefore, the availability or unavailability of compulsory process as to these unidentified Zoosk employees need not be considered.

In addition, other defendants in the GeoTag litigation have asserted that there are at least two third party witnesses knowledgeable about asserted prior art who live in the Dallas area, immediately adjacent to the Eastern District of Texas. *See* Buether Declaration at ¶ 3. Although these witnesses

do not reside in the Eastern District of Texas within this Court's absolute subpoena power, this Court may nevertheless compel these witnesses to testify in this forum pursuant to FED. R. CIV. P. 45(c)(3)(C). *See Transdata, Inc. v. Tri-County Cooperative, Inc.*, Civil Action No 6:11cv46 LED-JDL at 6 (E.D. Tex. Aug. 11, 2011); *i2 Technologies, Inc. v. Oracle Corporation*, Civil Action No. 6:09 CV 194 at 5 (E.D. Tex. August 17, 2010).

Thus, because Zoosk has failed to identify any third party witnesses located in the proposed transferee forum, one weak exception, and because there may be third party witnesses with relevant knowledge located in the Dallas, Texas area within the subpoena power of this Court, this factor weighs against transfer or, at most, is neutral.

### c. The Cost of Attendance for Willing Witnesses

All parties and witnesses must be considered in the analysis of this factor. *Volkswagen I*, 371 F.3d at 204. "Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established in *Volkswagen I* a '100-mile' rule, which requires that '[w]hen the distance between an existing venue for trial of a matter and proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.'" *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (internal citations omitted). Additionally, the convenience of non-party witnesses is given greater weight than that of party witnesses. *Stragent*, 2011 WL 2912907, at *7; *NovelPoint*, 2010 WL 5068146, at *6; *see also BNSF Ry. Co. v. OOCL (USA), Inc.*, 667 F. Supp. 2d 703, 711 (N.D. Tex. 2009).

As discussed above, excluding Mr. Dunworth, Zoosk, has failed to identify any specific witnesses located in California for whom it would be clearly more convenient if this case were transferred to that venue. Zoosk merely mentions unidentified "Zoosk employee fact witnesses"

who live in the san Francisco area. Dkt. No. 35 at 9. Zoosk does not identify a single employee with relevant knowledge. As this Court declared in *Innovative Automation, LLC v. Audio Video and Video Labs, Inc.*, Civil Action No. 6:11-CV-234 LED-JDL (E.D. Tex. May 30, 2012), "the Court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum." *Id*. at 13. *See also NovelPoint Learning v. Leapfrog Enter.*, No 6:10-cv-229, 2010 WL 5068146, at *6 (E.D. Tex. Dec. 6, 2010) (stating that the Court will not base its conclusion on unidentified witnesses); s*ee also West Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011).

Zoosk also mentions another co-inventor – Joan Nagelkirk – who resides in Chicago, Illinois. Dkt. No. 35 at 10. This witness, however, would have to travel a significant distance for trial regardless of whether GeoTag's claims against Zoosk are transferred to the Northern District of California or not. Thus, Zoosk's identification of this witnesses does not support transfer. *RMail Ltd. v. DocuSign, Inc.*, 2:11-CV-299-JRG at 6 (E.D. Tex. April 23, 2012) ("The Court views any difference in travel from Los Angeles to Seattle, Washington when compared with travel from Los Angeles to Marshall, Texas as substantially insignificant. While the Court recognizes that there are physical differences in such travel, as highlighted above, the Court also recognizes that travel time and cost often vary significantly depending upon when travel is considered, booked, and what resources were used to conduct the same. Accordingly, for those witnesses traveling from Los Angeles, travel to Marshall is no less convenient than travel to Seattle.")

GeoTag has identified three of its employees or independent contractors who reside in this forum who will be witnesses. *See* Buether Declaration at ¶ 4. In addition, as discussed above, other defendants in the GeoTag litigation have asserted that there are at least two third party witnesses knowledgeable about asserted prior art who live in the Dallas area. It would be more convenient for

these witnesses if this case were not transferred.

Furthermore, the cost of attendance at trial in San Francisco would be significantly greater than trial in this forum because of the increased food and lodging costs and the longer expected trial length in the Northern District of Texas. The per diem rates for fiscal year 2012 published by the General Services Administration show that the San Francisco per diem rate for lodging averages more than two times as much as in the Eastern District of Texas. *See* Buether Declaration at ¶ 5. Thus, the relative burden to Zoosk to attend trial in this forum is not as great as the burden to GeoTag and its witnesses to travel to California to attend trial.

Thus, this factor weighs against transfer.

### d. Other Practical Problems

The goal of §1404(a) is to "prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964). As a result, in appropriate circumstances, courts have analyzed the goal of preventing unnecessary inconvenience and expense under the rubric of "judicial economy." Furthermore, "courts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice." *In re Vistaprint Ltd.,* 628 F.3d 1342, 1346 (Fed. Cir. 2010) (citing *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960))(additional citation omitted); *see also* 28 U.S.C. §1404(a) ("For the convenience of the parties and witnesses, in the interest of justice . . . )(emphasis added). Thus, although judicial economy is not among the list of enumerated *Gilbert* factors, it is "a paramount consideration when determining whether a transfer is in the interest of justice." *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). "[T]he existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice . . . [T]o

permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Continental Grain Co. v. The FBL585*, 364 U.S. 19, 26, 80 S. Ct. 1470, 4 L.Ed.2d 1540 (1960). Although patent infringement cases "may not involve precisely the same issues, there will be significant overlap and a familiarity with the patents could preserve time and resources." *Volkswagen*, 566 F.3d at 1351.

Transfer of GeoTag's claims against Zoosk to California would not promote judicial economy in this case. Only Zoosk and five other defendants among the hundreds of defendants in the GeoTag litigation have sought transfer of GeoTag's claims against them to another forum, and each of these defendants seek transfer to different forums. Therefore, transferring GeoTag's claims against Zoosk and the other defendants who have filed transfer of venue motions would splinter this litigation into at least six separate actions pending in six separate forums, leaving hundreds of defendants in the litigation pending in this forum. Each of these separate actions will involve similar issues of claim validity, claim construction, claim scope, discovery, evidence, proceedings, and trial. Transferring GeoTag's claims against Zoosk would create duplicative, parallel proceedings on the same patent, unnecessarily wasting judicial resources and raising the specter of inconsistent adjudication. In short, transfer would squarely contradict the goals of §1404(a). *See Van Dusen,* 376 U.S. at 616 (opining that the goal of §1404(a) is to "prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense"). Thus, especially in view of the weak showing of private factors favoring transfer, this is a situation where judicial economy is a "paramount consideration in determining whether transfer is in the interest of justice." *Volkswagen II*, 565 F.3d at 1351.

Transfer should be denied for this reason alone. This Court has denied motions to transfer on this ground in several cases with even less compelling circumstances than the GeoTag litigation. *See Innovative Automation, LLC v. Audio Video and Video Labs, Inc.*, Civil Action No. 6:11-CV-234 LED-JDL (E.D. Tex. May 30, 2012); *Patent Harbor, LLC v. Twentieth Century Fox Home Entertainment, LLC*, Civil Action No. 6:10-CV-607 LED-JDL (May 25, 2012).

Although Zoosk acknowledges that this judicial economy factor weighs against transfer, it cites the Federal Circuit's decision in *In re Zimmer Holdings, Inc.,* 607 F.3d 1378 (Fed. Cir. 2010) to suggest that this factor should not be given the weight to which it is entitled. Dkt. No. 35 at 14. *Zimmer*, however, is distinguishable. *In re Zimmer,* the Federal Circuit found the district court abused its discretion by denying transfer based on a co-pending suit where only one of sixteen patents overlapped between the two cases. *Zimmer Holdings, Inc.,* 607 F.3d at 1382. The Federal Circuit found that any gains in judicial economy would be "negligible" because the cases would result in substantially different discovery, evidence, proceedings, and trial. *Id.* Zoosk also cites *In re Verizon Bus. Network Servs., Inc.*, 635 F.3d 559 (Fed. Cir. 2011), but acknowledges that, in that case, the movant made "a compelling showing of transfer." Dkt. No. 35 at 14. Zoosk also cites *In re Morgan Stanley,* 417 Fed. Appx. 947 (Fed Cir. 2011) in an attempt to undermine the paramount consideration that the judicial economy factor deserves in the circumstances of this GeoTag litigation. In *Morgan Stanley*, however, the Federal Circuit found that familiarity with some of the patents-in-suit did not outweigh the fact that "28 parties are located either in or close to the transferee venue and no party is located in the Eastern District of Texas." *Id.* at 949.

Finally, although Zoosk asserts that this Court did not preside over the claim construction proceedings in the *Geomas* case, this Court is in the process of gaining substantial familiarity with this litigation. Furthermore, Zoosk's argument ignores that judicial economy is promoted by

avoiding the existence of multiple lawsuits involving the same patent. *See Beneficial Innovations, Inc. v. Advance Publications, Inc.*, Civil Action No. No. 2:11cv229 at 10 (E.D. Tex. June 16, 2012) ("The above-captioned case is at an early stage, having just had a scheduling conference. Nonetheless, 'the existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice.'" (quoting *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009)).

### 4. Public Interest Factors

Zoosk's argument that the local interest factor favors transfer is without merit. Although Zoosk's headquarters is located in the Northern District of California, GeoTag has its headquarters located in the Eastern District of Texas and a substantial presence in this forum. Thus, citizens of the Eastern District of Texas have an interest in adjudicating this dispute, as do the citizens of the Northern District of California. This factor is neutral. *Azure Networks, LLC v. CSR, PLC*, Civil Action No. 6:11cv139 LED-JDL at 15-16 (E.D. Tex. June 25, 2012).

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. A proposed transferee court's "less congested docket" and "ab[ility] to resolve this dispute more quickly" is a factor to be considered. *In re Hoffmann-La Roche*, 587 F.3d at 1336. This factor weighs heavily against transfer. Although Zoosk asserts that "the median time from filing to trial is roughly the same between the Northern District of California (25.4) and the Eastern District of Texas (25.1)," more current data shows that this is far from the case. The median time from filing to trial in the Northern District of California is 10.6 months longer than in the Eastern District of Texas. *See* Buether Declaration at ¶ 6.

### CONCLUSION

Zoosk's motion to transfer should be denied.

Dated: July 23, 2012 Respectfully submitted,

**BUETHER JOE & CARPENTER, LLC**

By: */s/ Eric W. Buether*
Eric W. Buether
State Bar No. 03316880
Eric.Buether@BJCIPLaw.com
Christopher M. Joe
State Bar No. 00787770
Chris.Joe@BJCIPLaw.com
Brian A. Carpenter
State Bar No. 03840600
Brian.Carpenter@BJCIPLaw.com
Monica Tavakoli
State Bar No. 24065822
Monica.Tavakoli@BJCIPLaw.com
Mark D. Perantie
State Bar No. 24053647
Mark.Perantie@BJCIPLaw.com
Niky Bukovcan
State Bar No. 39403
Niky.Bukovcan@BJCIPLaw.com

1700 Pacific Avenue
Suite 4750
Dallas, Texas 75201
Telephone: (214) 466-1272
Facsimile: (214) 635-1828


**NI LAW FIRM, PLLC**

Hao Ni
State Bar No. 24047205
hni@nilawfirm.com

3102 Maple Avenue
Suite 400
Dallas, Texas 75201
Telephone: (214) 800-2208
Facsimile: (214) 800-2209

**ATTORNEYS FOR PLAINTIFF
GEOTAG, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a) on this 23rd day of July, 2012.  Any other counsel of record will be served by facsimile transmission.

*/s/ Eric W. Buether*
Eric W. Buether