# United States District Court
### EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| **GEOTAG, INC.** | § | |
| | § | |
| **v.** | § | Case No. 2:11-cv-403 |
| | § | |
| **ZOOSK, INC.** | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Zoosk, Inc.'s Motion to Transfer Venue (Doc. No. 35). Having fully considered the parties' arguments, the undisputed facts, and the applicable law, the Court **GRANTS** the motion and **ORDERS** this action be transferred to the United States District Court for the Northern District of California San Francisco Division.

**I.    BACKGROUND**

This litigation involves alleged patent infringement of U.S. Patent No. 5,930,474 (the '474 patent) titled "Internet Organizer for Accessing Geographically and Topically Based Information." This litigation includes a large number of related patent infringement cases. In these cases, Plaintiff accuses several hundred defendants of infringing the '474 patent by providing various locator services on their commercial websites. In general, the technology allows consumers to visit defendants' websites to obtain a map and listing of nearby locations or services.

In this particular case, Plaintiff GeoTag, Inc. (GeoTag) is incorporated under the law of Texas and has its headquarters and principal place of business within the Eastern District of Texas in Frisco, Texas. Defendant Zoosk, Inc. (Zoosk) is a privately held company and maintains its corporate headquarters within the Northern District of California in San Francisco, California.

Zoosk now argues that GeoTag's claims against it should be transferred to the Northern District of California pursuant to 28 U.S.C. § 1404(a). GeoTag opposes transfer and urges that Zoosk cannot demonstrate that the Northern District of California is a clearly more convenient forum.

## II.  LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A threshold inquiry is whether the suit "might have been brought" in the proposed transferee venue. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc) (*Volkswagen II*). Once a defendant satisfies that burden, the Court weighs certain factors to determine if transfer is warranted. *Volkswagen II*, 545 F.3d at 314 n.9; *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507–08 (1947). The moving party must show good cause by demonstrating the transferee venue is clearly more convenient. *Volkswagen II*, 545 F.3d at 314. Otherwise, a plaintiff's choice of venue must be respected because that choice places the burden on the defendant to demonstrate why venue should be transferred. *Id.* at 315 n.10.

When deciding whether to transfer an action, the Court balances the private interests of the litigants and the public's interest in the fair and efficient administration of justice. *Volkswagen II*, 545 F.3d at 315; *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008). The relevant factors are divided between these private and public interests. *Gilbert*, 330 U.S. at 508. "The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315 (quotation omitted). "The

public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.* (quotation omitted). These factors are not exhaustive, and no single factor is dispositive. *Id.*

### III. DISCUSSION

#### A. Proper Venue

The first question the Court must address when considering a motion to transfer venue under 28 U.S.C. § 1404(a) is whether the suit could have originally been filed in the destination venue, here, the Northern District of California. *Volkswagen II*, 545 F.3d at 312. In this case, the parties are in agreement that GeoTag's claims against Zoosk could have originally been brought in the proposed transferee forum. Accordingly, the Court finds the initial threshold satisfied.

#### B. Private Interest Factors

##### 1. <u>The Relative Ease of Access to Sources of Proof</u>

The first private interest factor is the relative ease of access to sources of proof. This factor weighs in favor of transfer when evidence could be more readily accessed from the proposed transferee district. Although documentary evidence is often stored electronically, the Court considers the physical location of the evidence. *In re Genentech, Inc.*, 566 F.3d 1338, 1345–46 (Fed. Cir. 2009). Documents relocated in anticipation of litigation are not considered. *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336–37 (Fed. Cir. 2009).

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d at 1345 (quoting *Neil Bros.*

*Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)); *see In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010) (explaining that a corporate party's relevant discoverable material is generally located at its headquarters).

Zoosk argues that all of the relevant evidence is located within the Northern District of California. Zoosk contends that the primary sources of proof in this suit are its technical documents describing the operation of its website, its source code, and its marketing and financial documents. According to Zoosk, all of this evidence is located at its headquarters in San Francisco. Zoosk concludes that all sources of proof are more readily accessible from the Northern District of California.

GeoTag maintains that it has considerable documentary evidence located at its headquarters within the Eastern District of Texas, including documents relevant to conception, reduction to practice, patent prosecution, licensing, and enforcement of the '474 patent. Under certain circumstances, credence must be given to a plaintiff's ties to the transferor venue. "[W]eight given to the location of [plaintiff's] documents is determined by whether [plaintiff] is an 'ephemeral' entity." *NovelPoint Learning LLC v. LeapFrog Enters.. Inc.*, No. 6:10-cv-229, 2010 WL 5068146, at *4 (E.D. Tex. Dec. 6, 2010); *see In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011) (per curiam) (describing a plaintiff's offices within the transferor forum as "recent, ephemeral, and a construct for litigation and appeared to exist for no other purpose than to manipulate venue"). Here, GeoTag's ties to the Eastern District of Texas are not recent or ephemeral. GeoTag and its predecessors involved in the licensing and enforcement of the '474 patent have been located in this district since 2007. GeoTag's executive management consists of Chief Executive Officer and lead inventor John W. Veenstra and President and Chief Financial Officer Lawrence P. Howorth. Both reside within the transferor venue in Plano, Texas.

Furthermore, Mr. Veenstra has resided in the district since 2007. GeoTag also employs several independent contractors in connection with its business at its Frisco headquarters, where all of its documents are located. Additionally, the Court finds GeoTag's presence in Eastern District of Texas is not an artifact of prior litigation. *See In re Verizon Bus. Network Servs., Inc.*, 635 F.3d 559, 561–62 (Fed. Cir. 2011). The Court does not believe that GeoTag's presence in the Eastern District of Texas is in anticipation of litigation or is an effort to forum shop. Rather, GeoTag's strong connection to the Eastern District of Texas is independent of this and prior litigation.

Even though GeoTag maintains strong ties to the Eastern District of Texas, the bulk of the relevant identified evidence is more easily accessed from the Northern District of California. *See In re Genentech, Inc.*, 556 F.3d at 1345 (explaining that an accused infringer generally maintains the bulk of the relevant evidence). On balance, this factor weighs in favor of transfer.

### 2. The Availability of Compulsory Process

The next factor is the availability of compulsory process. Transfer is favored when a transferee district has absolute subpoena power over a greater number of non-party witnesses. Absolute subpoena power means the power to compel attendance at both depositions and trial. *Hoffman-La Roche,* 587 F.3d at 1337–38. This factor requires the Court to look at non-party witness convenience rather than convenience of the party witnesses. *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 775 (E.D. Tex. 2000). Accordingly, transfer is heavily favored when the majority of the non-party witnesses reside in the transferee forum. *See Volkswagen II*, 545 F.3d at 316; *see Volkswagen II*, 545 F.3d at 304 (describing that Rule 45 of the Federal Rules of Civil Procedure protects non-party witnesses who live or work more than 100 miles from the courthouse).

Zoosk argues that the majority of the relevant third-party witnesses are located within the subpoena power of the Northern District of California. Zoosk identifies two non-party inventors, including Peter Dunworth of Pleasanton, California, as relevant third-party witnesses.

Zoosk additionally indicates that Google, Inc. (Google) is a meaningful non-party. Google is based in Mountain View, California and filed a declaratory judgment action in Delaware seeking to invalidate the '474 patent. As part of the Delaware action, Google issued subpoenas to a number of third parties. Zoosk now contends that Google is likely in possession of relevant information concerning prior art. Given the vague and speculative information provided by Zoosk, the Court is unconvinced that Google is currently in possession of evidence relevant to this litigation.

Furthermore, Zoosk indicates past assignees of the patent, Z Land, Inc. (Z Land) of Santa Ana, California and CityHub, Inc. (CityHub) of Aliso Viejo, California are likely to have relevant information. GeoTag does not challenge this assertion.

Zoosk also notes that Sega of America, Inc. (Sega) and Teletrac Inc. (Teletrac) both allegedly developed independent prior art store locator systems. Sega is headquartered in San Francisco while Teletrac is located in Garden Grove, California. Zoosk contends that Sega featured on its website a prior art system which predates the filing date of the '474 patent. Additionally, Zoosk argues that Teletrac's TELETRAC Mobile Information Server anticipates the '474 patent. Zoosk also alleges that Teletrac possibly designed products claimed in U.S. Patent No. 6,049,711 which precede the filing date of the '474 patent.

In response, GeoTag asserts that there are possibly third-party witnesses with knowledge of alleged prior art within the Northern District of Texas in the Dallas area.

Neither party details whether any of these witnesses are unwilling parties requiring subpoena. Furthermore, with the exception of Mr. Dunwoth, neither party specifically identifies any individual witnesses. The weight attributed to these witnesses is undercut by the parties' failure to identify particular unwilling witnesses that would require compulsory process. *See Effectively Illuminated Pathways, LLC v. Aston Martin Lagonda of N. Am., Inc.*, No. 6:11-cv-34, at 14 (E.D. Tex. Apr. 19, 2012); *Dymatize Enters., Inc. v. Maximum Human Performance, Inc.*, No. 3:09-cv-1840, 2010 WL 972240, at *2–3 (N.D. Tex. Feb. 28, 2010) (holding that although a party need not provide affidavits identifying witnesses and outlining testimony, it must at least identify the witnesses).

In the event that Zoosk's unidentified witnesses are required to testify at trial, the Northern District of California has the authority to compel them to attend trial. *See* Fed. R. Civ. P. 45(c)(3)(A)(ii) (stating that a "person may be commanded to attend a trial by traveling from any such place within the state where the trial is held"). This Court possesses that identical authority should it be necessary to compel the prior art witnesses in Dallas to attend trial in the Eastern District of Texas.

Importantly, neither party identifies any non-party witnesses located within the Eastern District of Texas.

The Northern District of California has absolute subpoena power over the single identified third-party witness. The proposed venue also has absolute subpoena power over the third-party corporations identified as potentially having relevant information. The Eastern District of Texas does not have absolute subpoena power over any identified non-party witnesses or corporations. Therefore, the Court finds this factor weighs slightly in favor of transfer.

### 3. The Cost of Attendance for Willing Witnesses

One of the most important factors is the cost of attendance for witnesses. In analyzing the cost of attendance of willing witnesses, courts consider the convenience of both party and non-party witnesses. *See In re Volkswagen AG*, 371 F.3d 201, 204 (5th Cir. 2004) (*Volkswagen I*) (requiring courts to "contemplate consideration of the parties and witnesses"). Nevertheless, the convenience to non-party witnesses is afforded greater weight than that of party witnesses. *NovelPoint*, 2010 WL 5068146, at *6. Under the Fifth Circuit's 100-mile rule, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen II*, 545 F.3d at 317. The greater distance witnesses have to travel for trial, the greater their expense and the longer they will be away from home and employment. *See Volkswagen I*, 371 F.3d at 205.

As a threshold matter, the courthouse for the San Francisco Division of the Northern District of California and the courthouse for the Marshall Division of the Eastern District of Texas are greater than 100 miles apart. Thus, the Court must assess the inconvenience to witnesses of having to travel to one venue over the other.

As previously noted, Zoosk identifies a number of third party corporations which it believes will testify regarding alleged prior art. All of these entities—Google, Z Land, CityHub, Sega, and Teletrac—reside in California. Travel to the San Francisco courthouse within the Northern District of California is significantly more convenient than the inconvenience imposed by travelling to Marshall. GeoTag asserts that there are potentially non-party witnesses located in Dallas who will testify concerning prior art. Thus, non-party witnesses from Dallas would find Marshall a more convenient forum. But these particular third-party witnesses are afforded little

weight because the parties fail to identify any witnesses with specificity. The Court affords these general assertions less weight because of their speculative nature.

The two non-party inventors are also believed to testify at trial. Mr. Dunworth is located in Pleasanton while Joan Nagelkirk resides in Chicago, Illinois. The Northern District of California would clearly be more convenient for Mr. Dunworth, while the Eastern District of Texas would be a preferred forum for Ms. Nagelkirk.

With respect to party witnesses, Zoosk does not specifically identify any individuals. Zoosk does note that its executives and all individuals having knowledge relevant to the development and design of its website are located at its San Francisco headquarters. Zoosk further indicates that it has no employees or offices within the Eastern District of Texas. Accordingly, the Northern District of California would be a considerable more convenient forum for Zoosk's party witnesses. But the weight afforded to this finding is mitigated by Zoosk's failure to identify specific witnesses.

GeoTag contends that the Eastern District of Texas is a more convenient venue for its party witnesses. Mr. Veenstra and Mr. Lawrence both live in Plano and work at GeoTag's headquarters in Frisco. Thus, travel to Marshall is considerably more convenient over travel to San Francisco. GeoTag also identifies Elizabeth Morgan as a party witness but only states that she resides within the Eastern District of Texas. Overall, trial in the Eastern District of Texas would be more convenient over the proposed venue for GeoTag's party witnesses.

Ultimately, the only non-party witnesses which would find the Eastern District of Texas more convenient are the alleged Dallas prior art individuals and Ms. Nagelkirk. All other non-parties would find the Northern District of California considerably more convenient. The party witnesses for both parties would find their respective forums more convenient. Because the

convenience to non-party witnesses is afforded greater weight than that of party witnesses, the Court finds this factor slightly favors transfer.

### 4. All Other Practical Problems

The fourth factor serves as a catchall for concerns that may weigh for or against transfer. For example, transfer is disfavored when the issue is raised late in the case. *Konami Digital Entm't Co. v. Harmonix Music Sys., Inc.*, No. 6:08-cv-286, 2009 WL 781134, at *7 (E.D. Tex. Mar. 23, 2009). And judicial economy may counsel against transferring a case when it would result in overlapping issues being simultaneously adjudicated in different districts. *In re Vistaprint Ltd.*, 528 F.3d 1342, 1345 (Fed. Cir. 2010). Generally, other practical problems focus on issues of judicial economy. Particularly, the "consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997).

This litigation involves over 100 cases against in excess of 400 defendants. Although GeoTag asserts the '474 patent in each case, none of the cases involve related defendants or overlapping products or services. GeoTag argues that having a single court familiar with the facts and legal issues would produce significant gains in judicial economy. The Court disagrees.

Although all of the cases involve infringement claims, none of them share the same accused services. GeoTag claims that common issues between defendants provide gains in efficiency. But this argument is unavailing. GeoTag has not pointed to any "common issues" that would not be present in all infringement cases (i.e. claim construction). This is not a situation where other practical problems jeopardize the easy, expeditious, and inexpensive trial of this dispute.

The Court will not permit the existence of separately filed cases to sway its transfer analysis. Otherwise, a plaintiff could manipulate venue by serially filling cases within a single district. Allowing a plaintiff to manufacture venue based on this alone would undermine the principals underpinning transfer law and the recently enacted America Invents Act. *See* Leahy-Smith America Invents Act, 35 U.S.C. § 299 (2011) (codifying new law for determining proper joinder in patent cases).

Since this case is still in its infancy, and because problems with judicial economy do not exist, this factor is neutral.

### C. *Public Interest Factors*

#### 1. **The Administrative Difficulties Flowing From Court Congestion**

The first public interest factor is court congestion. Generally, this factor favors a district that can bring a case to trial faster. *In re Genentech*, 566 F.3d at 1347. Of all the venue factors, this is the "most speculative." *Id.* When "several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors." *Id.*

Here, Zoosk notes that the median time from filing to trial in the Northern District of California is 25.4 months while in the Eastern District it is 25.1 months. Zoosk also notes that the Eastern District of Texas has a greater percentage of patent case than the Northern District of California. Zoosk highlights that 25% of the judicial assignments in the Eastern District of Texas are vacant compared to 21% in the Northern District of California. GeoTag presents data indicating that the median time from filing to trial in the Northern District of California is 10.6 months longer than in the Eastern District of Texas.

Based on the differing statistics, the Court is unconvinced that either venue suffers from issues stemming from administrative difficulties associated with court congestion. Therefore, this factor is neutral.

## 2. The Local Interest in Having Localized Interests Decided at Home

The next public interest factor is the local interest in adjudication of the case. Traditionally, the location of the alleged injury is an important consideration. *In re TS Tech*, 551 F.3d at 1321. When the accused products or services are sold nationwide, the alleged injury does not create a substantial local interest in any particular district. *Id.* Local interest also arises when a district is home to a party because the suit may call into question the reputation of individuals that work in the community. *Hoffman-La Roche*, 587 F.3d at 1338. The local interest in the litigation is an important consideration because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206.

Zoosk alleges that the Northern District of California has a strong local interest in resolving this dispute because Zoosk is headquartered in that district and it is where Zoosk developed the accused functionality. In support, Zoosk states that its approximately 120 employees regularly work out of its San Francisco headquarters. Therefore, the Northern District of California maintains a strong local interest in the resolution of this suit.

In contrast, GeoTag maintains corporate ties within the Eastern District of Texas. Therefore this venue also has a local interest in the outcome of this case. In addition to its headquarters in the transferor forum, GeoTag employs several independent contractors in connection with its business at its headquarters. As previously discussed, GeoTag's ties to the

existing venue are not recent or ephemeral and must be considered. Since neither district has a clearly established local interest over the other, this factor is neutral.

### 3. The Familiarity of the Forum With the Governing Law

Courts are also to consider "the familiarity of the forum with the law that will govern the case." *Volkswagen I*, 371 F.3d at 203. The Court notes that both the Northern District of California and the Eastern District of Texas are equally capable of applying the law regarding patent infringement. *See In re TS Tech*, 551 F.3d at 1320. Accordingly, as the parties agree, this factor is neutral.

### 4. The Avoidance of Unnecessary Problems of Conflict of Laws

The parties acknowledge that no conflict of laws questions are expected in this case. Thus, this factor is neutral.

## IV. CONCLUSION

Having fully considered all of the private and public interest factors, Zoosk has met its burden of showing that the Northern District of California is "*clearly* more convenient" than the Eastern District of Texas. *Volkswagen II*, 545 F.3d at 315 (emphasis added). In balancing all of the factors, the Court finds that Zoosk has meet its "significant burden" under § 1404(a). *Id.* at 315 n.10. Accordingly, Zoosk's motion to transfer (Doc. No. 35) is **GRANTED**. The Court **ORDERS** that this case be immediately transferred to the United States District Court for the Northern District of California San Francisco Division. The 20-day waiting period established in Local Rule 83(b) is waived.

It is SO ORDERED.

SIGNED this 14th day of January, 2013.

MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE